## COUNTY OF FRANKLIN.

### WILTON MANUFACTURING COMPANY *versus* BUTLER.

If a judgment be recovered against a corporation, the levy of the execution upon their property is not a trespass against them, though, both in the judgment and in the execution, their name is variant from that given them by their charter of incorporation.

Whether the corporation were in fact the party to the said judgment, recovered under a name variant from their corporate name, is, (*as it seems,*) a question of fact, upon which parol evidence may be introduced to the jury.

An officer may be protected in the service of an execution, although there were such irregularities in the writ and in the service of it, as would, if pleaded, have abated the suit, and although, for such irregularities, the judgment was afterwards reversed on writ of error.

A sheriff is not accountable in trespass for the act of C., his deputy, in serving an *execution,* although C. committed a fraud in the serving of the *writ* on

which the judgment and execution were obtained, *if* when serving such *writ*, C. was the deputy, not of the *present*, but of a *former* sheriff.

Personal property having been duly advertised for sale on execution at a time specified, and a postponement of the sale for two days having been made by proclamation, without the posting of advertisements, the officer would not be liable in trespass to the judgment debtor for selling the property at the postponed time, if the postponement, both as to the time and mode of it, was made at the request of such debtor.

An omission by the officer, to affix his signature to the return of a sale of property on execution, may be amended on proof to the Court, that the return was according to the truth of the case.

On REPORT from *Nisi Prius*, SHEPLEY, C. J.

TRESPASS. One count was *quare clausum*, and another was *de bonis asportatis*.

The action was against the sheriff for the act of one Calden, his deputy, in entering upon the plaintiffs' lands and factory building, and setting off upon execution a part of the same, and levying the rents and profits of another part, and for carrying from said lands and converting to his use a wooden store and fifty cords of wood and a single sleigh, all the property of the plaintiffs. The general issue was pleaded with a brief statement, justifying under an execution against the " *President, Directors and Company of the Wilton Manufacturing Company,*" against which name the judgment had been recovered. That suit was brought before the District Court for the *County of Penobscot*, by Ivory F. Woodman, who styled himself in his writ to be of *Boston* in the *Commonwealth of Massachusetts*, and he recovered judgment therein by default for $2818,19.

1. The plaintiffs proved that their corporate name was the " *Wilton Manufacturing Company,*" and contended that they were not a party to that judgment, and that, therefore, the levy upon their estate was unauthorized.

The Judge considered this question to be one of *fact*, and thereupon the parties submitted it as a question of fact, to be decided by the full Court upon the evidence.

2. It appeared *that* the writ in that suit was served by Calden, he then being a deputy under a sheriff, who preceded

this defendant in that office, *that* Calden returned on that writ that he had served it by leaving an attested copy of it " in the factory store ;" and *that* the execution thereon issued, (to the amount of $2818,34,) was levied by Calden, then a deputy of this defendant, upon the property of the plaintiffs, although he was requested not to serve the execution. The plaintiffs showed by appropriate evidence that that judgment had been reversed for the defect in the service of the writ.

They then offered to prove that the judgment was fraudulently obtained, and that Calden knew of the fraud and aided in it. To establish this proposition they relied, as they alleged, upon proving *that* Calden purposely made the pretended service in such form as would give no information of the suit to the plaintiffs in this action ; *that* Woodman, the plaintiff in that suit, had no residence in Massachusetts but, at the issuing of his writ, was resident in this county. These plaintiffs thereupon contended that the Court in the County of Penobscot had no jurisdiction of that suit.

The evidence was excluded.

3. Calden's return of the levy certifies that he appointed one of the appraisers for the debtor, " the said President, Directors and Company of the Wilton Manufacturing Company, by their secretary, Elijah D. Robinson, refusing to choose any person." On this account, the plaintiffs contended that Calden was a trespasser, inasmuch as he did not return that he had given the debtors a reasonable specified time in which to choose an appraiser. This position of the plaintiffs was overruled.

4. The levy was made on February 28, 1850, and it satisfied the execution only in part. A further return was indorsed on the execution of a sale of personal property. This return stated that the sale was advertised to be had on the second day of March at four o'clock, and that, upon the arrival of that time, the sale was adjourned publicly by proclamation, without the posting up of advertisements, to the fourth day of March at two o'clock, at which last period the sale was effected. This return however was without signa-

ture. The defendant then proved that the adjournment, both as to its mode and time, was made at the request of the plaintiffs' agent.

The case was withdrawn from the jury without a verdict, and the questions of law involved in it were submitted to the Court for a legal decision.

*John S. Abbott*, for the plaintiffs.

1. The execution served by Calden was not against these plaintiffs, whose corporate name is the "Wilton Manufacturing Company" and not the "President, Directors, and Company of the Wilton Manufacturing Company." The counsel here commented largely upon the testimony as to that point; but, as it was submitted to the Court as a question of *fact* merely, the argument upon it need not be further stated.

2. The evidence tending to prove *that* Woodman's judgment was fraudulently obtained; *that* Calden knew of the fraud; and *that* he aided in it, was wrongfully excluded. For the purposes of this examination, these facts are to be now considered as proveable. How can Calden or any one, liable for his doings, justify under a precept obtained by such a fraud of his own? Woodman's residence was in the county of Franklin, as we offered to prove, though fraudulently described to be in Boston. The corporation had its established place of business in Franklin. It was in that county alone, therefore, that his suit, if he was entitled to any, should have been brought. The Court in Penobscot had no jurisdiction, and the judgment was void. There was nothing in the case showing jurisdiction. Woodman was described to be of Massachusetts. Nothing appears in the writ, to show that the defendant party had any established place of business in the State, or belonged to the State, or was incorporated or had any property within the State. No property was attached, and the officer's return showed no legal service of the writ. Can a judgment confer any authority, when thus fraudulently obtained, in a court having no jurisdiction, with no legal service of the writ, and with no actual or constructive notice to the party sued? The enormities of

such a proposition are too apparent for specification. They are glaringly illustrated in this very case. For nothing was ever due to Woodman from the Company. Remedies against *him* are worthless; and, unless this suit is maintainable, the Court gives sanction to a most flagitious transaction, by which the Company is hopelessly robbed of the whole amount of the fraudulent judgment.

The case of *Granger, Adm.* v. *Clark,* 22 Maine, 128, may be relied upon by the defendant. The case at bar may perhaps be distinguished from that in two particulars. In *that* case, upon the face of the papers, it appeared that the Court had jurisdiction. In *this* case, upon the face of the papers, it does not appear that the Court had jurisdiction. *Here* is no case so described, as to the action, parties and residence of the parties, that the Court *apparently* had any jurisdiction.

As the defendant is obliged to introduce parol proof that the original defendants belonged in this State, in order to make out a case of jurisdiction, it would be strange if the plaintiffs might not be permitted to introduce the same kind of evidence to show that the Court had *not* jurisdiction.

The case at bar is not between the parties to the first judgment; and for this reason, it may be distinguished from that.

But if otherwise, I respectfully suggest that that decision urgently needs a careful revision. It would seem from the opinion, that the decision was made, with nothing but dicta cited on the one side and under the impression that there was no authority to sustain the other side.

If that case is to remain the law in all its length and breadth, and is to be construed to embrace such a case as this, the mischiefs must be incalculable. In that case, a remark is made by the Chief Justice, that "it is commonly said that fraud vitiates every thing, and that a judgment rendered by a Court without jurisdiction is a nullity." It is that doctrine that I contend for, and that an execution issued upon such a judgment affords no protection to an officer, even if he be ignorant of the writ of jurisdiction, much less to one, who, as, in this case, had full knowledge of it.

I contend further that, if a party procures or aids in the procurement of a judgment by fraud, as did Calden in this case, he cannot justify, nor any other person liable for his misdoings, under such fraudulently obtained judgment. I have not been able to find any case, in which a party has been permitted to justify any act, by reason and virtue of his own previous fraud; and it would seem to be inconsistent with the plainest principles of justice that he should. 2 Stark. Ev. 223, 242, 243. The law laid down there is, that fraud destroys the effect of a judgment altogether. In a note on page 242, Lord Coke is cited for the doctrine that "fraud avoids all judicial acts, ecclesiastical and temporal. To the same effect are *Hull* v. *Blake*, 13 Mass. 157; *Potter* v. *Wheeler*, 13 Mass. 507; *Winchell* v. *Stiles*, 15 Mass. 230; *Borden* v. *Fitch*, 15 Johns. 121; *Andrews* v. *Montgomery*, 19 Johns. 164; 2 Stark. on Ev. 253; *Fairfield* v. *Baldwin*, 12 Pick. 388; *Westervelt* v. *Lewis*, 2 M'Lean, 501; *Boynton* v. *Foster*, 7 Met. 415; *Smith* v. *Knowlton*, 11 N. H. 191; 10 Met. 436; 7 Smedes & M. 85; 10 S. & M. 282; Cases cited in 2 U. S. Dig. 224, § 147, Supplement. In the case 4 U. S. Dig. 280, § 54, it was held that a judgment without notice is void, and that a sale under an execution on such judgment must be equally so. *Marshalsea case*, 10 Coke's R. 69.

It may be urged that the defendant is not responsible for the fraud of Calden, because committed under the appointment by the former sheriff. But we answer that the serving of the execution was a new fraud. And this was done under his appointment by the defendant.

3. By R. S. c. 94, § 4, 5, the officer, before selecting an appraiser for the debtor, is to give him notice, and allow "him a reasonable specified time within which to appoint an appraiser," and his return must show a compliance with every statute requirement. Failing to do so, if the officer proceed and turn the plaintiffs out of possession, he is a trespasser *ab initio*. In this case, he gave no such notice.

4. As to the personal property, there is no return of the

officer.  By this, I mean that there is no return, *signed* by
any one.  It is unnecessary therefore to point its other nu-
merous defects.

*May* and *Cutler*, for the defendant.

TENNEY, J. — The defendant was qualified as sheriff of the
County of Franklin, on January 25, 1850, and Albert Calden
as his deputy on Feb. 2, 1850.  An action of assumpsit was
commenced by I. Fenderson Woodman, plaintiff, declared to
be of Boston, in the Commonwealth of Massachusetts, against
the "President, Directors and Company of the Wilton Manu-
facturing Company," on Nov. 17, 1849, and service of the writ
therein made on the same day by Calden, acting as the deputy
of a former sheriff.  The action was for the County of Penob-
scot, and at a term which began its session on January 1,
1850 ; the same was entered and the defendants therein made
no appearance but were defaulted.  Judgment was rendered
on Feb. 12, 1850, and execution issued thereon, the 15th of
Feb., and both were in legal form.  By authority of this exe-
cution, levy was made by Calden on the plaintiffs' real estate
on Feb. 28, and on personal property on March 26, 1850.

This action is trespass *quare clausum fregit* for the acts of
the defendant by Calden his deputy, in making the levies upon
the property of the plaintiffs.  And the questions involved are,
1st.  Whether the officer had the right to take the property of
the "Wilton Manufacturing Company," the corporate name of
the plaintiffs, upon the execution against the President, Di-
rectors and Company of the Wilton Manufacturing Company,
on the hypothesis, that the judgment and execution were valid.
2d, Whether the execution under the facts proved and offered
to be proved, is a protection to the defendant, for the acts done
by the deputy in making the levies.  3d, Whether the pro-
ceedings of the deputy under a valid execution were accord-
ing to legal provisions, and effectual to transfer the property
from the plaintiffs.

The report of the case shows, that upon such evidence
adduced at the trial as was admissible for the purpose, the

Court are to decide the question, as one of fact, whether the writ and judgment in favor of Woodman were against the plaintiffs, if by such decision there can be a final determination of the cause upon all the points raised.

1. The plaintiffs were incorporated as the "Wilton Manufacturing Company." All Acts of incorporation shall be deemed public Acts, R. S. c. 1, § 2. Of such courts of the same State are bound to take judicial notice. 1 Greenl. Ev. § 6. No corporation can be created with power to hold real estate or personal property in this State, excepting by the legislative power thereof.

The "Wilton Manufacturing Company" was incorporated on March 23, 1838, for the purpose of manufacturing cotton, linen and wool, in Wilton, in this State; and evidence was introduced, which was satisfactory, that the charter of that corporation was accepted, and an organization took place under it, and business was continued to be done in obedience to its provisions. No corporation in the State bears the name of the "President, Directors and Company of the Wilton Manufacturing Company," under any Act of the State, and there is no evidence, that there is any corporation which has assumed or been called by that name. It appears, that on Feb. 28, 1838, the "Wilton Upper Mills Manufacturing Company" was incorporated for the purpose of manufacturing wool, wood, cotton, iron and steel, at Wilton Upper Mills, in Wilton. But there is no evidence that any organization ever took place under the Act; but on the contrary, witnesses, who had full opportunity to know the fact if it existed, state, they have no knowledge that any other Manufacturing Company in the town of Wilton was organized, excepting that of the "Wilton Manufacturing Company." Consequently no mistake has been made by the defendant, acting by his deputy, in taking the plaintiffs' property, for the purpose of applying the same or the avails thereof towards the satisfaction of an execution against any other corporation in Wilton, having a legal existence.

The plaintiffs' agent gave a promissory note in their behalf

under the name of the "Proprietors of the Wilton Manufacturing Company." This shows that the plaintiffs' agent was not careful always, to use the corporate name. The balance of the execution, remaining unpaid, after the completion of the levies complained, of was paid by the plaintiffs' authorized agent. The evidence is plenary, that the original suit in favor of Woodman was designed to be against the plaintiffs, both by him and the attorney who made the writ and prosecuted the action. The service of the writ was intended by Calden to be returned as made against the plaintiffs. It cannot be doubted as a fact, that the writ in the suit, and the judgment and execution thereon were really against the plaintiffs, under a name differing in terms from that given to them in the Act of incorporation.

2. The plaintiffs deny that the execution in the hands of Calden was a protection to the defendant, for Calden's acts in making the levies, under the facts attempted to be shown, and excluded, in connection with all the facts reported. And they insist, that the Court in the county of Penobscot had in truth no jurisdiction of the original action, and that it was by the fraud of the plaintiff therein, known to Calden, and participated in by him, that the judgment was there obtained. And for this they rely upon the fact, *that* the plaintiffs were sued by a name not authorized by the Act of incorporation; *that* the plaintiff in that suit was a resident of Wilton, and *that* he procured Calden to make service in a mode which would communicate no information of the suit to the plaintiffs in this action. If that suit was in the name of one, who had his residence in Wilton at its commencement, or if the service had been essentially defective, and could not have been used by an amendment, or if the defendants therein were sued by a wrong name, the suit might have been abated in proper proceedings upon a plea of abatement in appropriate form and seasonably filed. But it does not follow, that on proof of these facts, the judgment and execution can be impeached, so that they furnish no ground of defence for the defendant.

The Court of the county of Penobscot had jurisdiction of

the subject matter of the suit, and of the defendants in that suit, if the corporation was in this State, and the plaintiff resided elsewhere. Upon the face of the proceedings, the plaintiff resided in Massachusetts, and the defendants were incorporated to do business in this State. The Court therefore, under the law of the State, and facts apparent upon the writ, had jurisdiction of the parties. And there being no appearance to controvert the facts thus appearing, the jurisdiction was legally exercised.

The Court having jurisdiction of the subject of the suit, and the parties, — the writ, the service and the evidence was before it, and having taken jurisdiction, the judgment was effectual between the parties, notwithstanding the defect in the service of the writ, and could not be reversed, excepting upon a writ of error. *Granger* v. *Clark*, 22 Maine, 128 ; consequently the judgment was also sufficient to authorize an officer to make service of an execution issued upon it, as long as it was in full force and not reversed. No obligation rests upon a ministerial officer, to look beyond a precept in his hands as a sufficient legal warrant to obey its commands, and it would be absurd to hold him accountable for any error in the judicial proceedings of the Court which awarded it.

It is not insisted for the plaintiff, that the fraud of Calden, unknown to any other officer, who might have had the execution, would make the latter a trespasser for the same acts, which Calden is complained of for having done. But a right to recover in this action is contended for, because the execution was the fruit of Calden's fraudulent agency, and he was requested not to take the property thereon. Hence, as is contended, the acts of Calden were unauthorized and amounted to a trespass at the time they were committed, and if a trespass in him, it was equally so in his principal the defendant.

The only fraud of Calden, was committed in the attempt to make the service of the original writ. That was at a time, when no relations of sheriff and deputy existed between the defendant and Calden, and the former could not *then* be responsible for the acts of the latter, or at any subsequent time,

for acts done by Calden before his appointment by the defendant. For such acts, the liability would be upon the deputy and the sheriff under whose commission he acted. Those acts were the cause of the injury charged as having been done to the plaintiffs. Can the defendant be made responsible for the effect, which has resulted from this cause, through a solemn judgment of a court having jurisdiction, because this effect has taken place during his administration? If so, and the defendant should be compelled to make payment of damages for the injury arising from such cause, the former sheriff could not be reached; and it would be unreasonable that he should escape liability for the fraud perpetrated by his deputy in his official acts, and that this liability should be shifted to the defendant and borne wholly by him, on account of his appointment of the same man to the same office, who levied the execution, obtained upon the judgment in the action, in which the fraud was committed. It cannot be admitted, that the levy of an execution upon a judgment of a court of competent jurisdiction is a *trespass*, or *a legally required act*, in the sheriff, according as it is in the hands of his deputy, who aided by a fraud, in the procurement of the judgment, while a deputy of another sheriff in the one case; *or* in the hands of the sheriff himself, or another deputy in the other. The judgment and execution cannot be treated as matters of such fluctuating power, that in the hands of the sheriff they impose upon him the duty imperatively to obey its direction, and in the hands of his deputy such obedience makes the principal a trespasser, and subjects him to the same liability to damages, as the same acts would do, unauthorized by any warrant whatever.

It was held in *Sims & al.* v *Slocum*, 3 Cranch, 300, that judgments of courts of competent jurisdiction, although obtained by fraud are not absolutely void; and all acts performed under them as respects third persons are valid. In the opinion of the Court, C. J. MARSHALL says, "a sheriff who levies an execution under a judgment fraudulently obtained is not a trespasser." " When the person, who has committed

the fraud attempts to avail himself of the act so as to discharge himself of a previously existing obligation, or to acquire a benefit, the judgment thus obtained is declared void. But it is believed, that no case can be adduced where an act which is the legal consequence of a judgment, has in itself created a new liability, even with respect to the party himself, much less with respect to third persons, who do not participate in the fraud."

3. Were the proceedings of the defendant's deputy, under the execution, wanting in conformity to legal requirements? In the return he states that one appraiser was chosen by him, another by the creditor, and the third by himself for the debtors, "the said President, Directors and Company of the Wilton Manufacturing Company, by their Secretary, Elijah D. Robinson, refusing to choose any person." By the authority of the case of *Fitch* v. *Tyler*, [see page 463 in this volume,] the return is not essentially defective in this particular.

By R. S. c. 117, § 6, an officer may postpone the sale of personal property not exceeding six days after the day appointed; and he is required to give the same notice of the postponement, provided for the original sale which is by posting notice in two public places in the town or place of sale, at least forty-eight hours prior to the sale. Sect. 5. The officer is not prohibited in terms from making a postponement for a time less than forty-eight hours; and if this should be done he could not give the notice, as it is required in a postponement for a greater length of time. But it becomes unnecessary in this case to discuss the effect of a postponement for a time less than forty-eight hours. The postponement seems from the return, to have been made in form and in substance at the request of the plaintiffs' agent; hence cause of complaint on their part is removed.

It is found by inspection of the certified copies, that the return upon the execution of the sale of the personal property is not authenticated by the signature of the officer. This defect is fatal, as it respects the personal property, unless it can be supplied. And a motion is made, that the officer

be permitted to amend his return in this particular. The amendment would come within the rule adopted in the case of *Fairfield* v. *Paine*, 23 Maine, 498. There is sufficient to render it probable, that there is an accidental omission. No design could be entertained to enter the return at length upon the back of the execution, of the seizure, the giving of notice, the adjournment and the final sale, specifically described unless the proceedings had been accordingly. On satisfactory proof being made to the Court, of the truth of the return, the officer is authorized to amend by affixing his signature to the return. If this should be done, the plaintiffs are to become nonsuit.

WELLS, HOWARD and APPLETON, J. J., concurred.